UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JAMES R. BIGGERS and PAMELA BIGGERS, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) NO. 1:15-cv-00041 ) JUDGE CRENSHAW ) |
| INTERNAL REVENUE SERVICE, | ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This is an appeal by Appellants James Robert Biggers ("Biggers" or the "Debtor") and Pamela Lynette Biggers (together, the "Biggers" or the "Debtors") from an order of the United States Bankruptcy Court for the Middle District of Tennessee (the "Bankruptcy Court") granting summary judgment to the Internal Revenue Service (the "IRS")[1] and declaring their tax assessments for 2001, 2002 (with the exception of an overage), 2003, and 2004 as nondischargeable under 11 U.S.C. § 523(a)(1)(B)(i).[2] For the reasons stated below, the decision of the Bankruptcy Court is **REVERSED** and this case is **REMANDED** to the Bankruptcy Court for further proceedings consistent with this opinion.

---

[1] Although the IRS is referred to as the party defendant for ease of reference, "[i]t is a well settled principle that the IRS cannot be sued and the proper party in actions involving federal taxes is the United States of America." In re Smith, 205 B.R. 226, 227 n.1 (B.A.P. 9th Cir. 1997) (internal citations omitted).

[2] Unless otherwise stated, all statutory references herein are to specific sections of the Bankruptcy Code, 11 U.S.C. §§ 101 et seq.

## Background

The undisputed facts of the underlying case are relatively simple. The following background is found in the Bankruptcy Court's memorandum opinion on the cross motions for summary judgment filed by the Biggers and by the IRS:

> The [Biggers] did not file federal tax returns for 2001, 2002, 2003 and 2004. The IRS assessed federal tax against [James Biggers] for 2001 on August 23, 2004, for 2002 on February 20, 2006, for 2003 on September 4, 2006, and for 2004 on November 6, 2006.[3] Thereafter, on February 15, 2007, the [Biggers] filed their joint tax returns for 2001 through 2004. With the exception of 2002, the [Biggers] reported that they owed less tax than the IRS had previously assessed. For 2002, the [Biggers] reported that they owed $15,088 more in tax. The IRS concedes that this overage of $15,088 is dischargeable. The IRS also concedes that [Pamela Biggers'] tax liability is dischargeable because the IRS never assessed federal tax against her for these years.
>
> The [Biggers] filed a voluntary chapter 7 petition on December 9, 2009, the IRS was a scheduled creditor. The [Biggers] received a discharge on March 11, 2010.

(Doc. No. 5-14 at 2.)

The IRS argues that these are the only salient facts appropriately considered. The Biggers argue that there are disputed facts, including, most significantly for purposes of summary judgment, whether the IRS made adjustments to the tax obligations as a result of or otherwise utilized the late-filed Form 1040s submitted by the Biggers. (See Doc. No. 10-1 (Affidavit of James and Pamela Biggers)).[4] Among the other disputed facts is the Biggers' joint Affidavit in

---

[3] The Biggers contend that the assessments were against both James Biggers and Pamela Biggers and if the tax liability is dischargeable as to Pamela Biggers, as conceded by the IRS, is likewise dischargeable as to James Biggers. (See Doc. No. 5-6 at 2.) The determination of that disputed fact, even if material, is not necessary to the outcome of this appeal.

[4] The IRS maintains that the Biggers cannot raise for the first time on appeal the proper amount of their tax liability. (See Doc. No. 11 at 17.) The Court agrees that the determination of the amount of the Biggers' outstanding tax liability would be a new argument that cannot be considered and resolved for the first time on appeal. See McFarland v. Henderson, 307 F.3d 402, 407 (6th Cir. 2002) (issues not presented to the trial court but raised for the first time on appeal are not properly before the appellate court). However, as the Court understands the Biggers' argument, they are not seeking to have this Court determine the amount of their outstanding tax liability, but, rather,

support of their motion for summary judgment, which provides some account of their reasons for not timely filing income tax returns. (See Doc. No. 5-5 (Description DE 10-1) at 2; Doc. No. 5-6 (Description DE 13) at 3.) In their Affidavit, the Biggers state:

> In 1999, our financial business records were seized by Gilmore County Bank and those records were never released. We had to recreate the information to be able to proved [sic] the Defendant with the required information for the aforementioned tax years. In addition, we moved approximately eleven times between 1999 and 2008.
>
> Between 2004 and 2006 we had engaged JK Harris to assist us with the tax years we had not filed. They had a power of attorney and were communicating with the Defendant regarding our returns. In late 2005, we realized that JK Harris was actually not doing anything for us so [sic] started talking with an account [sic] and the Defendant directly, through an agent named Ross Roy.

(Doc. No. 5-5 at 2.)

The Bankruptcy Court deemed the Biggers' arguments regarding disputed facts as "red herrings." (Doc. No. 5-14 at 7.) Relying on the test articulated by the Sixth Circuit in United States v. Hindenlang (In re Hindenlang), 164 F.3d 1029, 1033 (6th Cir. 1999), the Bankruptcy Court held that the "only issue is whether the Form 1040s submitted by the [Biggers] after the IRS had assessed tax liability served any tax purpose or had any effect under the Internal Code." (Doc. No. 5-14 at 7. Because the tax forms for 2001, 2003, and 2004 "all reported a lower liability than the amount originally assessed by the IRS", the Bankruptcy Court held that the forms served no purpose, which compelled, as a matter of law, that the tax liability assessed by the IRS against James Biggers for tax years 2001, 2002 (except as to the reported overage), 2003 and 2004 is nondischargeable as to James Biggers, thereby entitling to the IRS to summary judgment. (Doc.

---

to determine whether the IRS made adjustments to the assessed taxes or otherwise ascribed "meaning" to the Biggers' late-filed Form 1040s for purposes of examining the dischargeability of the tax obligations, in whatever amount.

No. 5-14 at 7-8.)[5] Based on this determination, the Bankruptcy Court did not consider either the underlying reasons asserted by the Biggers for the untimely Form 1040s or any action taken by the IRS in connection with the Form 1040s.

The issue on appeal is whether the Bankruptcy Court correctly determined that James Biggers' federal income tax liabilities for the 2001, 2002 (except as to the overage), 2003, and 2004 tax years are excepted from discharge under § 523(a)(1)(B)(i), because his Form 1040s for those tax years were not "returns" within the meaning of § 523(a)(*). The Biggers argue that the Bankruptcy Court erroneously concluded that the "hanging paragraph" added to 11 U.S.C. § 523 in 2005 by the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") defining "return" for dischargeability purposes did not change existing pre-BAPCPA law in the Sixth Circuit. The IRS urges the Court to adopt the standard applied by the Bankruptcy Court; namely, that "an untimely income tax form can be a "return" in certain circumstances, but cannot be considered a "return" when it is filed after the Internal Revenue Service [has] already assessed the tax." (Doc. No. 11 at 6-7.)

## **Standard of Review**

District courts have jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy judges. See 28 U.S.C. § 158(a)(1). Because there is a bankruptcy appellate panel in the Sixth Circuit, an appellant must elect to have the appeal heard by the district court. See 28 U.S.C. §158(c)(1). Appellants James and Pamela Biggers elected to have this appeal heard by the District Court. (Doc. No. 1 at 2.) On appeal of a bankruptcy court's decision granting summary judgment, the district court reviews a bankruptcy court's factual findings for clear error and its legal conclusions *de novo*. See In re Wells, 561 F.3d 633, 634 (6th Cir. 2009). Summary judgment

---

[5] The tax form for 2002 reported $15,088 in additional tax liability, which the IRS conceded was subject to discharge. Memorandum Opinion, DE 5-14, at p. 7.

is appropriate when the record shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Id. (citing Fed.R.Civ.P. 56(c) and Celetex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

**Discussion**

In general, an individual who files for relief under chapter 7 of the Bankruptcy Code is discharged from all pre-petition debt, subject to certain exceptions, including those found in Section 523 of the Bankruptcy Code. *See* 11 U.S.C. § 727(b). The exception at issue here excludes any debt "with respect to which a return, or equivalent report or notice, if required … was not filed or given." 11 U.S.C. § 523(a)(1)(B)(i).

The parties agree that the Biggers eventually filed a Form 1040 for each of the subject tax years. By the time they did so in 2007 however the IRS had already assessed deficiencies against the Biggers for the entire four-year period. The disputed question is whether the Biggers' untimely Form 1040s for tax years 2001, 2002, 2003 and 2004 were "returns" under § 523(a)(1)(B)(i). If not, the tax debts are nondischargeable.[6] To answer this question, the Court must determine what constitutes a "return" for purposes of this statutory exception to discharge. This is a question of law reviewed *de novo* by this Court. United States v. Hindenlang (In re Hindenlang), 164 F.3d 1029, 1032 (6th Cir. 1999).

Prior to the 2005 enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), the term "return" was not defined in the Bankruptcy Code. In the Hindenlang case, which predated BAPCPA, the Sixth Circuit examined federal tax law and reiterated the definition of "return" set forth in Beard v. Commissioner, 82 T.C. 766, 1984 WL 15573 (1984),

---

[6] As noted, the IRS conceded that the additional tax liability for the 2002 tax year was discharged.

5

aff'd 793 F.2d 139 (6th Cir. 1986). Hindenlang, 164 F.3d at 1033. Under the so-called Beard test, for a Form 1040 to qualify as a return:

> (1) it must purport to be a return; (2) it must be executed under penalty of perjury; (3) it must contain sufficient data to allow calculation of tax; and (4) it must represent an honest and reasonable attempt to satisfy the requirements of the tax law.

Id. (citation omitted).

In 2005, BAPCPA added a "hanging paragraph" to Section 523 to define "return" as:

> For purposes of this subsection, the term "return" means a return that satisfies the requirements of applicable nonbankruptcy law (including applicable filing requirements). Such term includes a return prepared pursuant to section 6020(a) of the Internal Revenue Code of 1986, or similar State or local law, or a written stipulation to a judgment or a final order entered by a nonbankruptcy tribunal, but does not include a return made pursuant to section 6020(b) of the Internal Revenue Code of 1986, or similar State or local law.

11 U.S.C. § 523(a)(*).[7] Now, to be a "return" for bankruptcy discharge purposes, a document must satisfy the requirements of applicable nonbankruptcy law and be filed in accordance with applicable filing requirements.

As noted by the Bankruptcy Court, courts are divided on whether, under applicable nonbankruptcy law, every income tax return that is filed late is a "return" for discharge purposes. See In re Biggers, 528 B.R. 870, 872 (Bankr. M.D. Tenn. 2015) (compilation of cases). While the Sixth Circuit has not yet ruled on what constitutes a "return" post-BAPCPA, the First, Fifth, and Tenth Circuits have all concluded that the Beard test no longer applies and § 523(a)(*) excludes from its definition of "return" **any** untimely form.[8] The IRS apparently did not advocate

---

[7] Most courts have adopted an asterisk to indicate the "hanging paragraph."

[8] See Fahey v. Massachusetts Dept. of Rev. (In re Fahey), 779 F.3d 1, 10 (1st Cir. 2015) (2-1 decision); Mallo v. IRS (In re Mallo), 774 F.3d 1313, 1321 (10th Cir. 2014); McCoy v. Mississippi State Tax Comm'n (In re McCoy), 666 F.3d 924, 932 (5th Cir. 2012). Notably, both the Fahey case from the First Circuit and the McCoy case from the Fifth Circuit dealt with what constitutes a state tax return, a determination that the Sixth Circuit expressly declined to address. Hindenlang, 164 F.3d at 1033 n.4.

for this result below. Id. ("The Court agrees with the IRS and those decisions that define "applicable nonbankruptcy law" as the pre-BAPCPA Beard test.")

The IRS suggests that, if this Court is disinclined to follow the Bankruptcy Court's reasoning, it might adopt the Fifth Circuit's approach in In re McCoy, namely, that a late-filed tax form cannot be considered a "return" for dischargeability purposes. See Docket No. 11 at 11. This appears to be a reversal of position because in other cases, the IRS expressly advocated against the McCoy result stating "The United States does not adopt this position, which creates a harsh result that appears inconsistent with the statute's intent." In re Maitland, 531 B.R. 516, 519 (Bankr. D. N.J. 2015) (quoting Martin v. Internal Revenue Service (In re Martin), 508 B.R. 717, 727 n. 14 (Bankr. E.D. Cal. 2014)). Indeed, the draconian result of a *per se* rule excluding from discharge all untimely tax forms cannot be reconciled with the well-established rule that exceptions to discharge are to be strictly construed in favor of the debtor. United States v. Storey, 640 F.3d 739, 743 (6th Cir. 2011) (citing Hindenlang); see also In re McBride, 534 B.R. 326, 332-36 (Bankr. S.D. Ohio 2015) (analyzing bright-line approach to meaning of "return"); In re Maitland, 531 B.R. at 519-22 (same).[9] The Court adopts the sound and thorough reasoning of the bankruptcy courts in the Southern District of Ohio in the McBride case and the District of New Jersey in the Maitland case in respectfully disagreeing with the conclusion that an untimely form can never constitute a "return" under § 523(a)(*). See also In re Briggs, 511 B.R. 707, 713-15 (Bankr. N.D. Ga. 2014)

---

[9] The Court recognizes that the stated purposes of BAPCPA included "restoring personal responsibility and integrity in the bankruptcy system." H.R.Rep. No. 109-31-109th Cong. 1st Sess., 2005 U.S.C.C.A.N. 88. Even with this stated purpose, though, after BAPCPA exceptions to discharge continue to be narrowly construed "to promote the central purpose of the discharge—a fresh start for debtors." In re Leonard, 644 F.App'x. 612 (6th Cir. 2016) (internal citation omitted). See also Marrama v. Citizens Bank of Mass., 549 U.S. 365, 367, 127 S.Ct. 1105, 1007 (2007) (principal purpose of the Bankruptcy Code is to grant a fresh start to the honest but unfortunate debtor). Here, the IRS does not allege any fraud in connection with the Biggers' tax debt. That would be a separate basis for nondischargeability. 11 U.S.C. § 523(a)(1)(C).

7

(analyzing and declining to adopt interpretation of "return" that excludes all untimely forms). The Court concludes that "applicable nonbankruptcy law" as used in § 523(a)(*) includes pre-BAPCPA case law, which encompasses the Beard test, as well as any other nonbankruptcy law as to the requirements for a return.

Here, the IRS concedes that the Biggers' late filings satisfy the first three elements of the Beard test. The only issue is whether the late filings represent an "honest and reasonable attempt to satisfy the requirements of the tax law." Hindenlang, 164 F.3d at 1034. Pre-BAPCPA, the Sixth Circuit said of this part of the Beard test that "as a matter of law … a Form 1040 is not a return if it no longer serves any tax purpose or has any effect under the Internal Revenue Code." Id. This language has sometimes been construed as establishing a *per se* rule that an untimely filing can never be an honest and reasonable endeavor to comply with the tax law. See e.g., In re Payne, 431 F.3d 1055, 1059 (7th Cir. 2000). However, Hindenlang did not necessarily dictate that result, even by its own language, because it left open the possibility of circumstances where a Form 1040 filed after assessment might serve a tax purpose. Hindenlang, 164 F.3d at 1034 n.5 and 1035 n.6.[10]

Now, under § 523(a)(*), whether a filing satisfies the requirements of a return depends not only on consideration of Hindenlang, the determination must also be informed by any other applicable nonbankruptcy law. A survey of reported Tax Court decisions on when a taxpayer honestly and reasonably attempts to comply with tax law is therefore instructive, particularly those decided after Hindenlang. The Bankruptcy Court for the Northern District of Georgia undertook this examination in the Briggs case:[11]

---

[10] The U.S. Tax Court has described Hindenlang as utilizing a subjective approach to the "honest and reasonable attempt" prong of the Beard test. See Green v. C.I.R., 95 T.C.M. (CCH) 1512 at *14 n.13 (T.C. 2008), aff'd, 322 F. App'x 412 (5th Cir. 2009).

[11] The "honest and reasonable attempt" prong of the Beard test is usually referred to in Tax Court cases as the third prong due to different ordering.

> The U.S. Tax Court tends to analyze [this] element of the Beard test based on the form and content of the taxpayer's filing. Walbaum v. C.I.R., 106 T.C.M. (CCH) 68 (T.C.2013) (no honest and reasonable attempt where taxpayer's form 1040 was filled out with all zeroes for relevant figures); Diamond v. United States, 107 Fed.Cl. 702, 706 (Fed.Cl.2012), *appeal dismissed* (Feb. 26, 2013), *aff'd,* 530 Fed.Appx. 943 (Fed.Cir.2013), *reh'g denied* (Oct. 22, 2013), *cert. denied,* ––– U.S. ––––, 134 S.Ct. 1344, 188 L.Ed.2d 309, (2014) (taxpayers could not have reasonably believed requirements of tax law fulfilled where filing withheld information regarding wage and foreign income); Glover v. C.I.R., 100 T.C.M. (CCH) 342 (T.C.2010) (no honest and reasonable attempt where taxpayer used incorrect form); Sakkis v. C.I.R., 100 T.C.M. (CCH) 459 (T.C.2010) (honest and reasonable attempt where return reported accurate wages, exemptions, and personal information, despite claiming frivolous deductions); O'Boyle v. C.I.R., 100 T.C.M. (CCH) 14 (T.C.2010) *aff'd,* 464 Fed.Appx. 4 (D.C.Cir.2012) (no honest and reasonable attempt where taxpayers' income figures omitted majority of their taxable income).
>
> Other tax court cases include an analysis of the taxpayer's subjective intent at the time of filing … whether the taxpayer intended to convey accurate information in the filing. See Laue v. C.I.R., 103 T.C.M. (CCH) 1575 (T.C.2012) ("[T]he Commissioner should not be forced to accept as a return a document clearly not intended to provide the required information.") (quoting Coulton v. Commissioner, T.C. Memo.2005–199); Williams v. Commissioner, 114 T.C. at 143 (2000) (finding that a taxpayer's "denial of tax liability and refusal to self-assess [did] not evidence a reasonable attempt to satisfy his obligation to file a return under the tax laws"); see also Green v. C.I.R., 95 T.C.M. (CCH) 1512 (T.C.2008) *aff'd,* 322 Fed.Appx. 412 (5th Cir.2009) (noting the disagreement among the bankruptcy courts over whether test for honest and reasonable under the Beard analysis should scrutinize the debtor's intent and circumstances or the face of the document filed, but declining to adopt a position). But see Mendes v. C.I.R., 121 T.C. 308, 330 (2003) (Vasquez, J. concurring) (endorsing the per se approach adopted in Hindenlang).

In re Briggs, 511 B.R. at 718. In applying the Beard test, the Tax Court has consistently looked to the taxpayer's action and intent, as well as to the nature of the information provided. Fairly recently, the Tax Court noted that, in a case in which the taxpayer's honesty and reasonableness in attempting to comply with tax laws is the only issue, which often tips the scale against the taxpayer, because of the taxpayer's intentional recording of "uninformative entries," contains "*no information from which a determination of tax liability can be made.*" Sakkis v. C.I.R., 100 T.C.M. (CCH) 459, at *7-8 (T.C. 2010) (emphasis in original).

9

One tax case the Court finds particularly instructive in applying the Beard test in post-assessment circumstances is Swanson v. C.I.R., 121 T.C. 111 (2003), which involved a chapter 7 debtor who failed to file income tax returns, but then claimed that the tax liabilities assessed by the IRS for those years were dischargeable. In analyzing the Beard requirements, the Tax Court specifically considered the debtor's intent, as reflected in his actions, and concluded that the taxpayer's late filings were not a valid return because "there [was] no evidence that he attempted to file any returns on his own initiative or *that he cooperated with the Commissioner* in a manner that might represent an honest and reasonable attempt to satisfy the requirements of the tax law." Id. at 124 (emphasis added). The court explicitly considered the debtor's subjective intent and actions, including the extent to which an effort was made to provide accurate and complete income and deductions information.

Additionally, Treasury Regulation § 301.7122-1(d), which became effective in 2002, requires that any taxpayer who wants to propose a compromise of his tax liability must file a return, even if the IRS has already calculated and assessed the tax due without the taxpayer's help. 26 C.F.R. § 301.7122-1(d) (implemented by Form 656). As noted by Judge Easterbrook in his dissent in In re Payne, 431 F.3d 1055 (7th Cir. 2005), this regulation "tells us that the Treasury Department does think that a taxpayer's post-assessment of all income and deductions is useful." Id. at 3060 (Easterbrook, J. dissenting). Judge Easterbrook further canvassed other tax purposes served by the required return, including that

> [t]he taxpayer then will be unable to deny that he had income; the agency will be able to levy on his assets without protest that it made up the numbers. A belated return will close off some avenues, narrow the dispute that remains should litigation ensues, and—well, it will facilitate compromise. When both sides have the same information, settlement is easier to achieve.

Id. at 1060-61. Because any compromise under § 7122 of the Internal Revenue Code depends on the taxpayer's submission of returns in accordance with 26 C.F.R. § 301.7122-1(d) (implemented by Form 656), submission of the returns has "an effect under the Internal Revenue Code." Hindenlang, 164 F.3d at 1034. See also Boulez v. C.I.R., 810 F.2d 209, 213-14 (D.C. Cir. 1987) (tax regulations have the force of law). This regulation could also be regarded as a "filing requirement" within the meaning of § 523(a)(*), further supporting that returns filed post-assessment are returns for purposes of § 523(a)(1)(B)(i).

Judge Easterbrook's evaluation of the utility of the post-assessment filings is also consistent with the second sentence of § 523(a)(*), which specifically includes in the definition of return (i) an IRS-prepared return where the debtor/taxpayer provides the information to the IRS, but not one where the debtor/taxpayer did not participate and (ii) a written stipulation to a judgment. Put another way, in Hindenlang parlance, inclusion of these documents as returns under § 523(a)(*) suggests that there is a tax purpose served when the amount and collectability of a tax debt can be established—and therefore made easier for the IRS—as a result of a debtor's cooperation.

## Conclusion

Having considered applicable nonbankruptcy law requirements for a return, the Court concludes that the determination of the fourth prong of Beard is a subjective test that allows for circumstances in which there can be an honest and reasonable attempt to comply with the tax law even after assessment by the IRS and even when untimely forms do not report additional tax liability. Here, the only circumstances considered by the Bankruptcy Court in determining the honesty and reasonableness of the Biggers' attempt to comply with tax laws was the timing of the Form 1040s and the nonexistence of any additional tax liability. Based on the entirety of the

record, the Court concludes that the Bankruptcy Court erred. Accordingly, the decision of the Bankruptcy Court is therefore **REVERSED** and this case is **REMANDED** for further proceedings consistent with this decision.

The Court will enter an accompanying order.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE